J-S04016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: W.E.A.O., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.O., MOTHER | No. 3021 EDA 2016 |

Appeal from the Decree July 28, 2016
In the Court of Common Pleas of Pike County
Civil Division at No(s): 11-2016-OA

BEFORE:  SHOGAN, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 31, 2017**

J.O. ("Mother") appeals from the July 28, 2016 decree in the Court of Common Pleas of Pike County involuntarily terminating her parental rights to her son, W.E.A.O. ("Child"), born in May of 2015.[1]  We affirm.

We summarize the factual and procedural history of this case as follows.  Child was removed from Mother's custody in May of 2015, when he was three days old, due to deplorable conditions in Mother's home.  Trial Court Opinion, 9/14/16, at 1; N.T., 7/27/16, at 9.  The trial court adjudicated Child dependent on June 3, 2015.  Trial Court Opinion, 9/14/16,

---

[*] Former Justice specially assigned to the Superior Court.

[1] By separate decree entered on July 28, 2016, the trial court involuntarily terminated the parental rights of J.R., Jr. ("Father").  Father did not appeal.

at 1. Pike County Children and Youth Services ("CYS") developed a Family Service Plan ("FSP") that required Mother to provide a nurturing environment during visits with Child; provide clean, safe, and stable housing for Child; complete a parenting services program; comply with mental health requirements; meet the Child's medical needs; and cooperate with CYS. *Id.* at 2; N.T., 7/27/16, at 22, 26.

On June 10, 2016, CYS filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). A hearing occurred on July 27, 2016, during which CYS presented the testimony of its caseworkers, Jennifer Dargenio and Shannon Wisniewski. Mother was present and represented by counsel, but she did not testify.

By decree dated July 27, 2016, and entered on July 28, 2016, the trial court involuntarily terminated Mother's parental rights. Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on September 14, 2016.

On appeal, Mother presents the following issues for our review:

1. Whether the [t]rial [c]ourt erred and abused its discretion by terminating Natural Mother's parental rights because there was a lack of clear and convincing evidence presented that Natural Mother has refused or failed to perform parental duties[?]

2. Whether the [t]rial [c]ourt erred and abused its discretion by terminating Natural Mother's parental rights because there was a lack of clear and convincing evidence presented that Natural

Mother cannot or will not remedy a continued incapacity, abuse, or neglect and caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being[?]

3. Whether the [t]rial [c]ourt erred and abused its discretion by terminating Natural Mother's parental rights because there was a lack of clear and convincing evidence presented that the conditions that led to the removal or placement of the child continues to exist, and that the parent cannot or will not remedy the conditions within a reasonable period of time[?]

Mother's brief at 6.

Our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if

the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the certified record supports the decree pursuant to Section 2511(a)(1) and (b), which provide as follows.

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(1), (b).

This Court has explained as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. **In re Adoption of R.J.S.**, 901 A.2d 502, 510 (Pa. Super. 2006). In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

**In re Adoption of Charles E.D.M.**, 550 Pa. 595, 708 A.2d 88, 91 (Pa. 1998).

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

**Id**. at 92 (citation omitted).

**In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008). Further, we have

stated that, "the trial court must consider the whole history of a given case

and not mechanically apply the six-month statutory provision." ***In re N.M.B.***, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

This Court has defined parental duty as follows:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

***In re B.,N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004).

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court

"must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Instantly, Mother argues that the trial court abused its discretion in involuntarily terminating her parental rights pursuant to Section 2511(a)(1) by mechanically applying "the six (6) month statutory provision without taking into consideration the entire case." Mother's brief at 12. Specifically, Mother asserts that she "has been involved with [CYS], completed her parenting program, attended visits and listened to instructions, and has attempted to resolve her housing issue." *Id.* In addition, Mother asserts that she was living in a new home at the time of the termination hearing. *Id.* at 11. We discern no abuse of discretion.

The trial court terminated Mother's parental rights based on the following factual findings, in relevant part:

> [W]hile this [c]ourt acknowledges that [Mother] completed her regular mental health evaluation, [Mother] had still not completed her required mental health disability service evaluation. [A]lthough [Mother] had completed the parent training course and attended all visits during the first few months of placement, [Mother] volitionally chose to see the Child less frequently, failed to attend all scheduled visits (sometimes without notice), attended none of the Child['s] medical

- 7 -

appointments, failed to take advantage of [CYS's] transportation services to attend visits, and demonstrated an inability to interact with and properly care for the Child during visits. Moreover, [Mother's] decreased attendance of parent-child visits occurred primarily in the six months immediately prior to the filing of the [p]etition for the [i]nvoluntary termination. . . . [W]hile [Mother] eventually obtained housing, she did so only after the filing and notice of the Petition for Involuntary Termination. Moreover, it has not been determined if the housing is suitable for the Child, nor did [Mother] properly communicate or cooperate with [CYS] regarding housing. [T]he Child is safe and receiving proper, cooperative care in the pre-adoptive home.

Trial Court Opinion, 9/14/16, at 8-9.

Upon review, the testimony of Jennifer Dargenio and Shannon Wisniewski, the CYS caseworkers, supports the court's findings. In its Rule 1925(a) opinion, the trial court aptly summarized the caseworkers' testimony, which we adopt herein. Trial Court Opinion, 9/14/16, at 2-5.

Specifically, Jennifer Dargenio testified that Mother obtained a mental health evaluation, which recommended that she attend counseling, but that CYS did not know whether Mother had been attending those appointments. N.T., 7/27/16, at 34. She testified that Mother had not completed a court-ordered development disability mental health evaluation. *Id.*

With respect to visitation, Ms. Dargenio testified that Mother "does not attend them on a regular basis." *Id.* at 13. She testified that out of a total of 73 scheduled visits, Mother attended 48. *Id.* Mother either cancelled or failed to appear for 25 visits. *Id.* Ms. Dargenio testified that Mother, at a time unspecified in the record, requested her visits be decreased from the

then weekly four hours because she "didn't know what to do with the child for two hours one day and then two hours the next day. . . ." *Id.* at 14. As a result, in January of 2016, CYS decreased her weekly visits to two hours. *Id.* at 17. Thereafter, Mother attended the visits sporadically, and she did not attend the scheduled visit on Child's first birthday. *Id.* at 17-20, 64. By the time of the hearing, CYS had further decreased her visits to biweekly for one hour. *Id.* at 13-14. Mother's last visit with the Child before the hearing was in April of 2016. *Id.* at 20.

Further, Ms. Dargenio testified that, although Mother completed a parenting program, she "was not able to use what she learned in the program with the child. There were workers that have helped her during visits to come up with appropriate ways of interacting with the child." *Id.* at 32.

With respect to housing, Ms. Dargenio testified that Mother's housing was unstable during Child's dependency, and that she would not allow CYS access to her housing. *Id.* at 29-31. At the time of the filing of the involuntary termination petition, Mother did not have housing. *Id.* at 10, 40-41. Ms. Dargenio testified that, on July 25, 2016, two days before the hearing, she became aware that Mother obtained housing. *Id.* at 41. She testified that CYS has not inspected the home. *Id.* at 42.

In addition, Ms. Dargenio testified that Mother has never attended any of Child's medical appointments. *Id.* at 31. Further, she testified that Child

has resided in a pre-adoptive foster home since his placement, and that his foster parents are meeting his needs. *Id.* at 9, 12.

As such, the testimonial evidence reveals that for at least the six months prior to the filing of the termination petition, Mother failed to perform her parental duties by not satisfying her FSP requirements regarding mental health, visitation, parenting skills, housing, and attending Child's medical appointments. Therefore, we conclude that the trial court did not abuse its discretion in terminating Mother's parental rights pursuant to Section 2511(a)(1). Mother's first issue fails. Based on this disposition, we need not consider Mother's second and third issues.

Mother does not raise an issue with respect to Section 2511(b). Nonetheless, we have scrutinized the decree pursuant to the requisite bifurcated analysis.

Our Supreme Court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***T.S.M.***, *supra* at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The ***T.S.M.*** Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts

- 10 -

fail . . . the result, all too often, is catastrophically maladjusted children."

***Id.***

In this case, Child was removed from Mother's custody when he was three days old, and there is no testimonial evidence that a parent-child bond exists between them. Therefore, it was reasonable for the court to infer that no such bond exists. ***See In re K.Z.S.***, ***supra***. As such, we discern no abuse of discretion by the trial court in concluding that terminating Mother's parental rights will serve Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b). ***See In re B.,N.M.***, ***supra*** at 856 (stating that "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment").

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/2017